303 So.2d 884 (1974)
In re Loudice BERNARD, Jr., and Jonorfoot J. Bernard
v.
James E. CAMPBELL et al.
No. 9998.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
Rehearing Denied December 16, 1974.
*885 Jonathan C. Harris, Baton Rouge, for State Dept. of Highways.
Terry E. Theriot, Lafayette, for plaintiff-appellee.
H. Alva Brumfield, III, Baton Rouge, for defendant and third party defendant-appellee Campbell.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
NEHRBASS, Judge.
This is an action for damages for personal injuries and property damages resulting from a collision at the intersection of Scenic Highway and Harding Boulevard in the Parish of East Baton Rouge which occurred at about 6:15 P.M. on July 20, 1971. Plaintiffs are Jonorfoot J. Bernard, driver of an automobile owned by his father, Loudice Bernard, Jr. Named originally as defendants were James E. Campbell, the driver of the other vehicle involved in the collision, the City of Baton Rouge, East Baton Rouge Parish, and the Louisiana State Department of Highways. The City of Baton Rouge and East Baton Rouge Parish were voluntarily dismissed from this suit by the plaintiffs when it was discovered that the traffic control signal at the above mentioned intersection was solely under the maintenance and control of the State Department of Highways.
The Department of Highways filed a reconventional demand against Jonorfoot J. Bernard praying for a contribution from said defendant in the event that it is required to pay anything in judgment to Loudice Bernard, Jr. Further, the Department of Highways filed a Third Party Demand against James E. Campbell, seeking contribution from that defendant in the *886 event that it is cast in judgment in favor of the two Bernards. Defendant, Campbell, filed a Third Party Demand against the Department of Highways for his own personal injuries; however, this claim was disposed of on an exception of lis pendens filed by the Department of Highways.
Judgment was entered in favor of plaintiffs and against the State Department of Highways. Jonorfoot Bernard was awarded the sum of $1,085.00 for his personal injuries and plaintiff, Loudice Bernard, Jr. was awarded the sum of $100.00 for property damages to his automobile. Plaintiff's suit against James E. Campbell was dismissed, the Court finding no negligence in James E. Campbell. All Third Party Demands were dismissed.
The Louisiana State Department of Highways has perfected this appeal seeking a reversal of this judgment on grounds that the trial court erred in finding it negligent. This appeal has not been answered. The only issue before this court is whether or not the Louisiana State Department of Highways was negligent in its maintenance of the traffic control device situated at the intersection of Harding Boulevard and Scenic Highway.
The evidence establishes conclusively that the traffic signal situated at the corner of Harding Boulevard and Scenic Highway was momentarily green for both drivers involved in this accident. Both Jonorfoot Bernard and James E. Campbell testified that the traffic light facing them was green. The State Trooper who investigated the accident observed that the traffic control device situated at the above mentioned intersection was momentarily and simultaneously giving a green light to traffic on Harding Boulevard and on Scenic Highway.
The intersection in question is crossed by two major thoroughfares. Both Scenic Highway and Harding Boulevard are four-laned. The intersection is controlled by a battery of electric semaphore traffic signals with standard red-yellow-green lights. There are left turn arrows on all four sides of the crossing. These lights are regulated by an M-42 two phased controller which is situated in a box affixed to a utility pole at one corner of the intersection.
In written reasons for judgment the trial court found that the traffic control device had malfunctioned. The trial court also noted that the evidence did not disclose the precise cause of the failure, nor did the evidence show that the light had behaved in this particular fashion on prior occasions. After reviewing the repair history of this particular light, and after noting the high degree of care exacted of those whose obligation it is to maintain traffic signals, the court held that the Department of Highways had sufficient complaints regarding the operation of the light prior to the malfunction involved herein to operate as a serious warning and should have taken adequate steps to insure the safe operation of the controls. The court further found that the malfunction of the light was the proximate cause of the accident and awarded damages to the plaintiffs.
We reverse and deny recovery to the plaintiffs. This court has previously recognized the high degree of care imposed upon those whose obligation it is to maintain traffic signals. In McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir. 1970), this court delineated this high standard of care by the following language:
"We preface our discussion of defendant's negligence by noting that as a matter of law a high degree of care must be exacted of those whose obligation it is to maintain traffic signals. We deem this rule necessary by the very nature of things. We judicially note that in municipalities, especially metropolitan areas, vehicular congestion on the public streets is constantly increasing. We deem it reasonable to conclude that increasing traffic volume poses new and added control problems to those authorities charged with the obligation of regulating automobile traffic. The greater the volume *887 of traffic, the greater is the need for effective vehicular control, which includes properly functioning signals upon which motorists may rely with confidence."
This court is cognizant of the high degree of care imposed upon those who maintain and repair traffic control devices, however, there exists some limitations on this rule. It is recognized that a municipality or other authority is not an insurer of the user of its streets and there is no absolute liability upon the municipalities for injuries occurring on its streets or sidewalks. Young v. City of Alexandria, 261 So.2d 286 (La.App.3rd Cir. 1972); Carlisle v. Parish of East Baton Rouge, 114 So.2d 62 (La.App. 1st Cir. 1959).
The above rule is likewise applicable to defective traffic control devices which are, by their nature, patently and obviously dangerous. Actual or constructive notice to the governmental authority responsible for the maintenance of traffic signals is a requisite to holding it liable for injuries resulting from the malfunction of the signal. See Austrum, et al. v. City of Baton Rouge, et al. 267 So.2d 284 (La.App. 1st Cir. 1972); Bourgeois v. State of Louisiana through Department of Highways, 255 So.2d 861 (La.App. 4th Cir. 1971); McDaniel v. Welsh, supra.
In Austrum, et al v. City of Baton Rouge, et al., supra, we upheld the lower court's finding of liability in the Parish of East Baton Rouge for injuries suffered by plaintiffs in an intersectional collision which occurred at the time that a traffic control device was malfunctioning. In that case the evidence disclosed that the traffic control device had been malfunctioning for a period of six days prior to the date of the accident and that the proper city and parish authorities had been notified of the malfunction on numerous occasions prior to the accident.
In Bourgeois v. State, through Department of Highways, supra, the court was also concerned with an intersectional collision which occurred at the time that a traffic control device was malfunctioning. In holding that the Department of Highways was negligent for its failure to repair the light, the court found that the control device had been malfunctioning for four days prior to the accident and that the department had been notified of this fact on numerous occasions prior to the accident.
McDaniel v. Welsh, supra, involved an intersectional collision which occurred at the time that a control device was malfunctioning. In this case the court reasoned that the governmental body which was responsible for keeping the traffic light in question in repair was negligent for permitting it to operate in an improper manner for four hours after it had constructive notice of a defect.
Examination of the service records of the Department of Highways on the traffic control device in question reveals that there was only one reported malfunction of the control device during a twenty-six day period immediately preceding the accident, and this malfunction was found to be due to a general conflicting signals to two drivers at the time of the accident. There is no showing that a failure of this nature had occurred previously. There is no evidence that the light had malfunctioned immediately prior to the accident. Further, Trooper Elliot testified that he had gone through the same intersection that day and the light was working properly.
The traffic control device in question had a considerable history of repair; however, there is no showing that the repair frequency was unusual as compared to other department experience. Additionally, we find that this particular control device had undergone major renovation on May 4, 1971, and had again been replaced on June 21, 1971 after a knock-down resulting from another accident. Consequently, the repair history occurring prior to these dates appears to be irrelevant to our inquiry.
*888 In the instant case we have carefully reviewed the evidence presented by both plaintiffs and defendant and we find that the Department of Highways had neither actual nor constructive notice of the malfunction prior to the accident and thus cannot be held liable for the injuries suffered by plaintiffs.
For the foregoing reasons the judgment of the lower court imposing liability upon the State Department of Highways is reversed and Judgment is herein entered in favor of the State Department of Highways and against the plaintiffs, dismissing plaintiffs' suit, with all costs to be borne by plaintiffs.
Reversed and rendered.